# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| vs. | ) Case No. 1:24-cr-00249-PTG |
| **ASIF WILLIAM RAHMAN,** | ) |
| Defendant. | ) |

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

COMES NOW Asif William Rahman, by counsel, and for his Opposition to the Government's Motion for Pretrial Detention, states as follows:

1. Introduction and Standard of Review

This matter comes before the Court on the United States' Motion for Pretrial Detention. The Bail Reform Act provides that a defendant shall be detained only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required for the safety of any other person and the community. 18 U.S.C. § 3142(e). The Court's decision is guided by the factors set forth in 18 U.S.C. § 3142(g). These factors are (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties, employment, financial resources, past conduct, and criminal history; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

In order to obtain a detention order, the Government must demonstrate either (1) by clear and convincing evidence that "no conditions other than detention will reasonably assure the

safety of any other person and the community," <u>United States v. Simms</u>, 128 F. App'x 314, 315 (4th Cir. 2005), citing 18 U.S.C. § 3142(f)(2); or (2) by a preponderance of the evidence that detention is necessary to reasonably assure the appearance of the defendant at future court proceedings. <u>United States v. Stewart</u>, 19 F. App'x 46, 48 (4th Cir. 2001).

The Government in this case has not established either a danger to the community or a risk of flight, and the motion therefore should be denied. Mr. Rahman was born and raised in the United States and has a highly supportive close-knit family in the D.C. metro area. Mr. Rahman has worked in a sensitive position for the U.S. government for more than eight years, during which time he has been subject to rigorous and continuous monitoring. Moreover, the Government's claims that Mr. Rahman should be detained because he poses a hypothetical risk of "obstruction" are surprising and disappointing when held against the tapestry of Espionage Act cases involving prominent defendants whom the government never sought to detain.

Under the government's reasoning in this case, any individual who ever held a security clearance or signed a nondisclosure agreement must be detained pending trial. These arguments amount to little more than indictment bootstrapping. In sum, the Government's proffer provides no legal ground for detention and, for the reasons set forth below, detention here would be unfair and unjust.

2. Mr. Rahman's Background and Ties to the Community

Asif Rahman was born in California to Muhit and Annie Rahman, who have been together since they met as college students. They moved to Ohio when their children were young and raised them just outside of Cincinnati.

Asif was the valedictorian of his high school class and, following in his parents' footsteps, matriculated at their college alma mater where he met his future wife, Deandra. Asif

excelled in his study of economics.  He graduated from college in three years and worked in finance in New York City for several years.  He then attended business school.

In 2015, Asif decided that he wanted to serve his country, and applied for and accepted a position with a U.S. government agency.  Despite his lack of any foreign language skills, he served as an analyst, earning coveted assignments.  Muhit and Annie Rahman purchased a home in Bethesda, Maryland, to be close to Asif and Deandra, who had purchased a home in Vienna, Virginia.  Deandra's parents completed the family cluster, moving to Tyson's Corner, Virginia.

During COVID, Asif considered attending law school in Canada, but ultimately decided against a career in law.  In his most recent assignment with the U.S. government, in Cambodia, Asif was looking forward to welcoming Deandra in January 2025, as spouses were allowed to accompany employees in that location.  In anticipation of that move, Asif and Deandra rented out their house in Virginia, and Deandra and their two cats moved in with Muhit and Annie while Deandra underwent medical treatment before leaving the United States.

While awaiting Deandra's arrival at his overseas U.S. government assignment, Asif planned a short tourist trip to Thailand where he prepaid his hotel.  He also had travel plans to return home to the United States to spend Thanksgiving with his family and then attend a conference for his U.S. government agency scheduled to begin on December 2, 2024.   Asif was set to return with one of the cats to Cambodia while Deandra underwent additional medical treatment before joining him overseas.

Before he took any of these planned trips, Asif was arrested at his workplace in the U.S. Embassy in Phnom Penh.  His access to any classified information or files was suspended, his electronic devices were seized, and his apartment was searched.

3. **Mr. Rahman Poses No Danger to the Community**[1]

There is no basis, let alone clear and convincing evidence, to conclude that Mr. Rahman poses any threat to the community. In fact, when asked about this matter, National Security Council Spokesperson John Kirby stated, "There is no indication that we have a reason to suspect additional documents of this sort finding its [sic] way into the public domain." Press Briefing, White House, On-the-Record Press Gaggle by White House National Security Communications Advisor John Kirby (Oct. 21, 2024).

Should the Court nonetheless entertain any of the proffered bases for detention, we submit that the below precedent effectively eviscerates the Government's arguments that detention is appropriate here:

> a. ***United States v. Frese***, No. 1:19-cr-00304 (E.D. Va. Oct. 8, 2019). Defendant, a Defense Intelligence Agency counterterrorism analyst, was charged with willful transmission of TOP SECRET national defense information which included details of foreign countries' weapons systems capabilities from intelligence reports that were outside the scope of Frese's job duties. He was alleged to have disclosed TOP SECRET national defense information orally to a journalist on 12 separate occasions and Secret information orally on 4 separate occasions. On at least 30 separate occasions, Frese was alleged to have conducted searches on classified government systems for information regarding the classified topics he discussed with the journalists. U.S. District Judge Brinkema ordered

---

[1] We note that the government did not move for detention on this subsection of the statute and we respectfully ask that the Court preclude argument on this basis.

Frese's release on a personal recognizance bond to a third party custodian (his sister) with GPS monitoring. Frese was born in Toronto, Canada.

b. ***United States v Kiriakou***, No. 1:12-cr-00127 (E.D. Va. Apr. 5, 2012). Defendant, a former CIA operative, was charged with (1) disclosing the identity of a covert agent; (2) disclosing TOP SECRET/SCI national defense information; and (3) a "trick and scheme" to conceal a material fact from CIA. The Government agreed to release on bond.

c. ***United States v. Albury,*** No. 18-cr-00067 (D. Minn. Mar. 27, 2018). Defendant, an FBI Special Agent, was accused of (1) disclosing classified national defense information to a reporter; (2) retaining classified national defense information at his private residence; and (3) employing methods to avoid detection including printing documents at the FBI field office that he created by cutting and pasting portions of an original so as to avoid leaving a record of having printed the document, and taking photographs of a classified computer screen to obtain classified information without detection. The Government agreed to release on personal recognizance with conditions including permitting the defendant to live and work out of state in California.

d. ***United States v. Drake***, No. 1:10-cr-00181 (D. Md. Apr. 14, 2010). Defendant, a former NSA employee, was charged with multiple violations of 18 U.S.C. § 793(e) as well as obstruction of justice and four counts of making false statements to the FBI. The Government agreed to release with conditions restricting travel.

e. ***United States v. Kim,*** No. 1:10-cr-00225 (D.D.C. Aug. 19, 2010). Defendant, a senior advisor for intelligence at the State Department, was charged with unauthorized disclosure of TOP SECRET/SCI national defense information to a reporter and making false statements in violation of 18 USC § 1001(a)(2). The Government agreed to release on $100,000 secured bond.

f. ***United States v. Leibowitz,*** No. 8:09-cr-00632 (D. Md. Dec. 4, 2009). Defendant, an FBI employee, was charged with disclosure of five documents containing classified information related to the communications intelligence activities of the United States to an internet blogger. The Government agreed to pre-trial release on personal recognizance.

g. ***U.S. v. Petraeus***, No. 3:15-cr-00047 (W.D.N.C. Mar. 3, 2015). Defendant, a former Director of CIA and U.S. Army 4-Star general and Commander of the International Security Assistance Force in Afghanistan, was alleged to have (1) kept "highly classified" "code word" materials in his private residence containing the identities of covert officers, war strategy, intelligence capabilities and diplomatic discussions; (2) agreed to provide such information to his biographer; and (3) obstructed justice by lying to FBI Special Agents. The Government never sought detention.

Considering the above, Mr. Rahman deserves equitable treatment under the Bail Reform Act, and should be released.

4. Mr. Rahman Will Appear at All Proceedings and Conditions Will Assure his Appearance

Mr. Rahman is not a risk of flight. His wife and parents live in the local area, and his family is what he cares about most in life. He has no intention of becoming a fugitive. He fully intends to defend this case. He would appear if placed on personal recognizance, but there are many other conditions that the Court can impose that would provide additional assurances. His parents are willing to serve as guardians to guarantee his appearance. They are willing to post their home as bond, or an amount of money that would similarly assure his appearance. He could be subject to electronic monitoring. He will report as often as required to his pretrial services officer. As is the case with other individuals like him, who are charged with non-violent offenses and who have no criminal record, the Court can impose conditions that will ensure his appearance and the safety of the community.

5. Conclusion

The mere fact that Mr. Rahman has been charged with serious offenses does not justify his detention under the Bail Reform Act. He has deep and supportive ties to the community and is part of a stable, loving family who will ensure his appearance at trial and all other proceedings. He is 34 years old and has no criminal record. Mr. Rahman and his family are willing to provide assurances to address any concerns. Moreover, there is no credible evidence that Mr. Rahman poses a risk to the community.

Under these circumstances, the Court need look no further than the above-referenced Espionage Act prosecutions—including those in which obstructionist activity was actually charged—to find that there is no lawful basis for pretrial detention here.

This the 6th day of December, 2024.

                              **ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ Amy Jeffress

Amy Jeffress (VA Bar No. 36060)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-5968
Amy.Jeffress@arnoldporter.com

/s/ Deborah Curtis

Deborah Curtis (DC Bar No. 451716)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-5081
Deborah.Curtis@arnoldporter.com

*Attorneys for Defendant.*