# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| vs. | ) Case No. 1:24-cr-00249-PTG |
| **ASIF WILLIAM RAHMAN,** | ) |
| **Defendant.** | ) |

## DEFENDANT'S SUPPLEMENTAL OPPOSITION TO GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

COMES NOW Asif William Rahman, by counsel, and for his Opposition to the Government's Motion for Pretrial Detention, states as follows:

1. Introduction

"In our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Through the Bail Reform Act of 1984, Congress codified that norm by providing for detention only if the Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community." 18 U.S.C. § 3142(e)(2). Under a limited set of circumstances, including when an individual is charged with certain offenses, a presumption of detention arises. 18 U.S.C. § 3142(e). The charges in this case do not raise such a presumption, nor do the other factors apply. Therefore, the presumption in this case is that Mr. Rahman should be released.

In order to obtain a detention order in this case, the Government must demonstrate either (1) by clear and convincing evidence[1] that "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005), citing 18 U.S.C. § 3142(f)(2); or (2) by a preponderance of the evidence that detention is necessary to reasonably assure the appearance of the defendant at future court proceedings. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). The Government cannot meet its burden here and the Court should release Mr. Rahman pending trial under the conditions recommended by the pretrial services officer.

Based on the precedents we have identified, if Mr. Rahman were detained pre-trial, he would be the *first* defendant charged with "leaking" classified information ever to be so detained in the Eastern District of Virginia, *see infra* 4. The previous leak cases in this District in which the defendants were not detained pre-trial include charges both similar and more serious than those Mr. Rahman is facing. A sampling includes:

(a) a CIA officer who revealed the Top Secret details of a U.S. covert operation, "Operation Merlin," to intentionally supply Iran with flawed nuclear warhead plans, along with the Top Secret identities of CIA human assets, in retaliation against the CIA, *United States v. Sterling*, No. 1:10-cr-00485 (E.D. Va. Dec 22, 2010), ECF No. 1 at 7–8;

(b) a National Geospatial-Intelligence Agency contractor, and former National Security Agency analyst, charged with revealing the U.S. "kill lists" related to the Top Secret U.S.

---

[1] "Clear and convincing evidence produces in the mind of a fact finder a firm belief or conviction, without hesitancy, about the truth of the allegations." *United States v. Francis*, 686 F.3d 265, 274 (4th Cir. 2012) (civil commitment proceeding against former offender); *see also United States v. Beard*, 528 F. Supp. 3d 764, 772 (N.D. Ohio 2021) (defining standard as "firm belief or abiding conviction that what is alleged is highly probable" in pre-trial detention context); *United States v. Jenkins*, 796 F. App'x 791, 793 (4th Cir. 2019) (defining standard as "evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, or evidence that proves the facts at issue to be highly probable" in context of involuntary administration of antipsychotic medication to restore defendant's competency).

lethal drone weapon program, "Operation Haymaker," which the Islamic State in Iraq and Syria (ISIS) "distribute[d]" in a "guidebook for its followers," *United States v. Hale*, No. 1:19-cr-00059 (E.D. Va. Mar 07, 2019), ECF No. 227 at 2;

(c) a Defense Intelligence Agency analyst who revealed Top Secret information about foreign partners' weapon systems and counterterrorism intelligence to reporters on 19 different occasions, *United States v. Frese*, No. 1:19-cr-00304 (E.D. Va. Oct. 8, 2019), ECF No. 47 at 10; and

(d) a CIA operative who revealed the name of a covert CIA officer, leaked the name *and* contact information of another CIA employee who took part in the 2002 Abu Zubaydah operation, and lied to the CIA. *United States v. Kiriakou*, No. 1:12-cr-00127 (E.D. Va. Apr. 5, 2012), ECF No. 1 at 3.

Many of the previous prosecutions involved charges of false official statements, criminal schemes, and other obstructionist activities. *See, e.g., United States v. Kiriakou.* And many of the other defendants presented far more risk of flight than Mr. Rahman – defendants who were fluent in several foreign languages (*e.g.*, Mr. Sterling, who spoke Farsi and recruited Iranian agents for the CIA, and Mr. Kiriakou who spoke Greek and Arabic and recruited sources for the CIA in the Middle East), or otherwise had strong ties to a foreign country (*e.g.*, Mr. Frese, who was born in Canada). Nevertheless, in each of the prior cases, the Court (and, as to most of those cases, the Government) was satisfied that conditions could be fashioned which would ensure both the defendant's appearance and the safety of the community.

The government has pointed to nothing that would justify a different outcome here.

2. <u>The Government Has Not Established that Mr. Rahman Presents a Serious Risk of Flight</u>.

Mr. Rahman was born and raised in the United States and has a highly supportive close-knit family in the D.C. metro area, including his college sweetheart wife. He has no foreign language skills and his only experience living outside of the United States has been on official business for the U.S. government.

  *a.* <u>The Nature and Seriousness of the Offense</u>

The seriousness of the charges is only one factor, and as the cases cited above demonstrate, the charges in this case, while serious, have not warranted pretrial detention. Moreover, the government may be overstating the seriousness of these charges. In arguing that Mr. Rahman should be detained, the prosecution claims that the release of these two documents "put entire countries at risk," ECF No. 19 at 1, because they describe the "armed forces" and "plans for imminent action" of a "foreign ally," Trans. Det. Hearing at 4 (Dec. 6, 2024).[2] U.S. and Israeli officials have been quoted in news outlets contradicting the Government's statements in this case. For example, the Government proffered at the detention hearing before Judge Davis that a "foreign ally delayed kinetic action" in response to the postings, Trans. Det. Hearing at 9. At least one Israeli official has represented precisely the opposite to The Washington Post, stating "*The content is not that significant*" and that the official "*doesn't consider the information revealed to have an impact on its planning* for possible actions against Iran." Rather, it was relevant only because it "raise[d] concerns about security." Perry Stein & Michael

---

[2] Compare with the allegations in the Superseding Indictment in *United State v Donald Trump, et al*, No. 23-80101-CR (S.D. Fla. June 8, 2023):
 In July 2021, at Trump National Golf Club in Bedminster, New Jersey ("The Bedminster Club"), during an audio-recorded meeting with a writer, a publisher, and two members of his staff, none of whom possessed a security clearance, TRUMP showed and described a "plan of attack" that TRUMP said was prepared for him by the Department of Defense and a senior military official. TRUMP told the individuals that the plan was "highly confidential .. and 'secret.'" TRUMP also said, "as president I could have declassified it," and, "Now I can't, you know, but this is still a secret."

4

Birnbaum, *FBI Investigates Alleged Leak of U.S. Insights on Israeli War Preparation*, Wash. Post (Oct. 22, 2024) (emphasis added). Further, U.S. officials have maintained that the leaks have inflicted little damage on international relations, saying it was "likely to result in only limited diplomatic fallout." *Id.* (emphasis added).

    b.  <u>Mistaken Representations of Foreign Ties</u>

The Government is mistaken regarding Mr. Rahman's alleged ties to foreign countries.[3] The Government writes, "it is worth emphasizing again that the defendant is an individual with significant means and experience living abroad." ECF No. 19 at 13. But *all* of Mr. Rahman's experiences "living abroad" (outside of short vacations) have been in connection with his employment by and in the service to his country. In other words, each time Mr. Rahman has lived abroad, he has resided on U.S. government compounds or housing rented arranged by the United States.

    c.  <u>Mr. Rahman has Strong Family Ties and Will Not Flee</u>

Mr. Rahman has deep and supportive ties to the community. Upon release, he would live with his parents and his wife. His parents are posting their home as surety for his appearance. He would not abandon them and their support, nor cause them significant financial harm. He will honor his commitment to appear for all proceedings.

  3.  <u>The Government Has Also Failed to Meet Its Burden To Establish that Mr. Rahman Presents a Danger to the Community</u>

There is no evidence that Mr. Rahman has any continuing physical access to classified documents. There is likewise no evidence that he has the intent or capacity to recall or to convey

---

[3] The Government's assertions concerning Mr. Rahman's attempt to emigrate to Canada are inaccurate. The Government claims, "[H]e concealed his desire to emigrate from his parents until they happened upon an acceptance letter to a Canadian graduate school." ECF No. 19 at 9–10. This is incorrect; Mr. Rahman's parents knew that he was considering this option and were surprised only by the admission letter. Mr. Rahman applied and was accepted to Canadian law schools but decided instead to remain in the United States to work for the U.S. government.

classified information from memory. Nevertheless, the Government speculates that information "in his head" renders Mr. Rahman a danger to the community. Such conjecture does not constitute clear and convincing evidence of danger to the community.

This argument has failed previously in this District. For example, the prosecution in *Sterling* alleged that because defendant had disclosed Top Secret CIA information to retaliate against the government, the remaining classified information in his mind posed a danger to the community. Sterling, ECF No. 9 at 5–11. Even though Mr, Sterling was charged with making retaliatory, oral disclosures of classified information, the District Judge rejected the prosecutor's speculative argument and ordered Sterling released on bond. Sterling, ECF No. 22.

Mr. Rahman fully intends to mount a defense against these charges. For him to disclose classified information now would destroy that defense. Further, the Government has proffered no evidence—beyond the bare charges, for which he is presumed innocent—that Mr. Rahman has any motive or incentive to disclose classified information. Admittedly, any such incentive is only further diminished for a defendant subject to scrupulous Government monitoring while on pretrial release. Mr. Rahman's conditions of release, which are similar to those of many defendants released pretrial by this Court, will ensure that he will not have the ability to transmit any sensitive information to unauthorized persons. Moreover, he has a strong incentive not to take such actions so that he can remain on release while living with his family.

4. The Government's Reliance on Out-of-District Precedent Is Inapt

The Government cites only one case, *United States v. Winner*, 1:17-cr-00034 (S.D. Ga. June 7, 2017), in which a defendant in a leak case was detained before trial. The factors weighing in favor of detention in Winner are readily distinguishable and should not be serve as precedent here. Specifically:

6

- Winner first lied to FBI agents and then admitted that she had illegally inserted a thumb drive into a Top Secret computer. The FBI was unable to recover the drive, leaving open the possibility that she could access additional classified information if she were released. *Winner*, 1:17-cr-00034, ECF No. 29 at 21.

- The government produced evidence that Ms. Winner—who is fluent in Farsi, Dari, and Pashto—had long wanted to live and work in the Middle East. *United States v. Winner*, No. 17-15458, slip op. at 4 (11th Cir. Jan. 31, 2018) (per curiam).

- Winner wrote: "I want to burn the [W]hite [H]ouse down. Find somewhere in Kurdistan to live . . . or Nepal. Ha, ha, maybe." *Id.* at 3 (alterations in original). Ms. Winner also remarked to her sister, "I have to take a polygraph where they're going to ask if I've ever plotted against the government. #gonna fail. . . . Look, I only say I hate America like three times a day. I'm no radical." *Id.* "When her sister asked her whether she actually 'hate[d] America,' Ms. Winner responded, 'I mean, yeah, I do.'" *Id.* at 3–4 (alterations in original).

- Winner had confessed anti-American sentiment and sympathy for Taliban leaders and Osama bin Laden. *Winner*, 1:17-cr-00034, ECF No. 29 at 21.

None of the evidence the Government mustered in the Winner case bears even a passing resemblance to the facts here. The absence of anything resembling the record in *Winner* counsels in favor of Mr. Rahman's release.

5. <u>Fourth Circuit Precedent Is Instructive</u>

A survey of similar prosecutions in this District demonstrates that this Court has ordered release for defendants accused of far more serious leaks than those charged here:

a. ***United States v. Frese***, No. 1:19-cr-00304 (E.D. Va. Oct. 8, 2019). Defendant, a Defense Intelligence Agency counterterrorism analyst, was charged with willful transmission of Top Secret national defense information to journalists on 12 separate occasions and willful transmission of Secret national defense information on seven additional occasions. *Frese*, ECF No. 47 at 1, 4. He did so "unceasingly" with "no end in sight" before his arrest. *Id.* at 16. According to the Government, his "choice to betray his oath to his country … caused actual harm to the safety of this country and its citizens." *Id.* at 13. The District Judge ordered the defendant released on a personal recognizance bond to a third party custodian (his sister) with GPS monitoring. *Frese*, ECF No. 15.

b. ***United States v Kiriakou***, No. 1:12-cr-00127 (E.D. Va. Apr. 5, 2012). Defendant, a former CIA operative, was charged with (1) disclosing the identity of a covert agent; (2) disclosing Top Secret national defense information; and (3) a "trick and scheme" to conceal a material fact from CIA. The direct results of these disclosures included a covert officer "being secretly photographed and his photographs being tendered to high-value Guantanamo terrorist detainees." *Kiriakou*, ECF No. 5 at 6. The Government argued, "The kind of damage caused by the defendant's disclosures cannot be underestimated." *Id.* at 5. Nevertheless, the Government agreed to release on bond. *Kiriakou*, ECF No. 6.

c. ***United States v. Sterling***, No. 1:10-cr-00485 (E.D. Va. Dec 22, 2010). Defendant

was charged with (1) six counts of unauthorized disclosure of national defense information, (2) unlawful retention of national defense information, (3) mail fraud, (4) unauthorized conveyance of government property, and (5) obstruction of justice. "The defendant's actions resulted in substantial damage to national security and placed in harm's way two human assets, their families, and those who worked with them." *Sterling*, ECF No. 464 at 4. Indeed, "his purpose was to maximize damage to the CIA as an institution – motivated by pure vindictiveness on his part." *Id.* at 15. The Court ordered released on personal recognizance to a third party custodian with conditions. *Sterling*, ECF No. 22.

d. ***United States v. Hale***, No. 1:19-cr-00059 (E.D. Va. Mar 07, 2019). Defendant was charged with unlawfully obtaining national security information, retaining and transmitting national security information, causing the communication of national security information, disclosure of classified communication intelligence information, and theft of government property. The defendant "*knew* that his superiors had determined that the disclosure of those documents risked causing serious, and in some cases exceptionally grave, damage to the national security of the United States." *Hale*, ECF No. 227 at 2 (emphasis in original). The court granted release under conditions. *See Hale*, ECF No. 21.

e. ***United States v. Franklin, Rosen***, ***and Weissman***, No. 1:05-cr-00225 (E.D. Va. May 26, 2005). Defendants, a Department of Defense employee and two lobbyists, were charged with conspiracy to communicate national defense information, unlawful retention of national defense information, communication of national defense information, and conspiracy to communicate classified

information. Defendant Franklin released to Defendants Rosen and Weissman classified military information regarding U.S. policy toward Iran and Israel. All defendants were released pre-trial on unsecured bonds with conditions. *Franklin*, No. 1:05-cr-00225-TSE-1, ECF No. 37; *Rosen*, No. 1:05-cr-00225-TSE-2, ECF No. 35; *Weissman*, No. 1:05-cr-00225-TSE-3, ECF No. 37.

Nor are those detention determinations unusual. They are consistent with decisions other courts have made in similar cases:

a. ***United States v. Drake***, No. 1:10-cr-00181 (D. Md. Apr. 14, 2010). Defendant, a former NSA employee, was charged with multiple violations of 18 U.S.C. § 793(e) as well as obstruction of justice and four counts of making false statements to the FBI. The Government alleged the defendant shredded classified documents that he had removed from NSA and deleted classified documents on his computer to avoid detection. *Drake*, ECF No. 1 at 7–8. The Government agreed to release with conditions restricting travel.

b. ***United States v. Leibowitz,*** No. 8:09-cr-00632 (D. Md. Dec. 4, 2009). Defendant, an FBI employee, was charged with disclosure of five documents containing classified information related to the communications intelligence activities of the United States to an internet blogger. The Government agreed to pre-trial release on personal recognizance.

c. ***United States v. Petraeus***, No. 3:15-cr-00047 (W.D.N.C. Mar. 3, 2015). Defendant, a former Director of CIA and U.S. Army 4-Star general and Commander of the International Security Assistance Force in Afghanistan, was alleged to have (1) kept "highly classified" "code word" materials in his private

residence containing the identities of covert officers, war strategy, intelligence capabilities and diplomatic discussions; (2) agreed to provide such information to his biographer; and (3) obstructed justice by lying to FBI Special Agents. The Government never sought detention.

d. ***United States v. Ford***, Nos. 8:05-cr-00098, 8:05-cr-00235 (D. Md. May 23, 2005). Defendant, an NSA employee, was charged with unauthorized possession of national defense information and making material false statements to a government agency. Defendant was released pre-trial. *Ford*, 8:05-cr-00235, ECF No. 2.

6. Conclusion

For the reasons set forth above, pretrial detention is unwarranted. If Mr. Rahman were to violate any of the conditions of release, including accessing electronic or telephonic devices, he would hurt not only himself, but his extremely close-knit, loving family.

Accordingly, we ask that this Court credit the findings of Magistrate Judge Davis and adopt the conditions of release proposed by the pretrial services officer.

This the 11th day of December, 2024.

**ARNOLD & PORTER KAYE SCHOLER LLP**

Amy Jeffress (VA Bar No. 36060)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-5968
Amy.Jeffress@arnoldporter.com

*Attorney for Defendant*