IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:24-CR-249 |
| | ) | |
| ASIF WILLIAM RAHMAN | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' MEMORANDUM OF LAW PURSUANT TO THE CLASSIFIED
INFORMATION PROCEDURES ACT AND MOTION TO SET PRETRIAL CONFERENCE
AND DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER

## INTRODUCTION

This prosecution involves the retention and disclosure of classified documents containing national defense information.  The indictment charges Defendant Asif William Rahman with the willful retention and transmission of national defense information.  The government has already determined that it will be required, pursuant to Federal Rule of Criminal Procedure 16, to provide classified materials to the defense in discovery.  Moreover, at least some classified documents will comprise part of the government's proof at trial.  And the government also anticipates that it may need the Court to make certain pretrial rulings as to the relevance, discoverability, use, and admissibility of classified material at trial.

Accordingly, the Classified Information Procedures Act, 18 U.S.C. App. 3 §§ 1-16 ("CIPA") will play a significant role in this case.  The United States files this memorandum of law regarding CIPA to notify the Court that matters related to classified information may arise in this case both before and during trial. To assist the Court in handling any classified-related matters that may arise, the United States provides the Court with the following description of the procedures mandated by CIPA for protecting such classified information. In addition, the United States

requests that the Court appoint a Classified Information Security Officer ("CISO") and set a Section 2 pretrial conference to address the case schedule.

## BACKGROUND

Defendant Asif William Rahman is charged in a two-count indictment with the willful retention and transmission of national defense information, in violation of 18 U.S.C. § 793. The Speedy Trial Act requires the trial to commence on or before February 14, 2025.

Classified information, including the national defense information that Defendant Rahman is charged with unlawfully retaining and transmitting, has been collected as part of the investigation of this case and will need to be handled in accordance with CIPA, in addition to the standard rules, statues, and case law that apply to discovery and the use of evidence at trial. The disclosure and use of such material will raise issues of national security that the Court will need to address. Thus, because Section 2 of CIPA authorizes a party to move for a pretrial conference any time after the filing of an indictment to consider matters relating to classified information, the United States requests that the Court hold a CIPA Section 2 hearing, adopt a scheduling order at that hearing, and respectfully requests that the Court designate a Classified Information Security Officer ("CISO"), as detailed below.

## LEGAL STANDARD: CIPA OVERVIEW

CIPA, enacted by Congress in 1980 and codified at 18 U.S.C. App. 3, contains a set of procedures by which federal district courts rule on pretrial and trial matters concerning the discovery, admissibility, and use of classified information in criminal cases. *See United States v. Sedaghaty*, 728 F.3d 885, 903-04 (9th Cir. 2013); *accord United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363-64 (11th Cir. 1994). "Classified information," as referred to in CIPA, includes "any information or material that has been determined by the United States Government pursuant

to an Executive order, statute or regulation, to require protection against the unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3 § 1(a). CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996); *see Sedaghaty,* 728 F.3d at 904 (quoting S. Rep. No. 96-823, at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4296) (Congress enacted CIPA "to help strengthen the enforcement of laws designed to protect both national security and civil liberties.").

The Supreme Court has long acknowledged the importance of protecting the Nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *CIA v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam)); *accord see Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Given this compelling interest, federal courts have recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

CIPA was enacted to enable district courts to evaluate potential classified information issues in criminal cases before trial to prevent the problem of unanticipated disclosures of classified material. *See Sedaghaty,* 728 F.3d at 904; *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (CIPA was enacted "to prevent the problem of 'graymail,' where defendants

pressed for the release of classified information to force the government to drop the prosecution."). CIPA provides district judges with a procedural framework "to rule on questions of admissibility involving classified information before introduction of evidence in open court [and] . . . permits the government to ascertain the potential damage to national security of proceeding with a given prosecution before trial." *Sarkissian*, 841 F.2d at 965 (quoting S. Rep. No. 96-823, at 1 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4297). The majority of CIPA's provisions set forth pretrial procedures to determine the relevance and admissibility of classified information to eliminate surprise and the risk of unanticipated disclosures. *See id.*

CIPA neither creates any new right of discovery nor expands the rules governing the admissibility of evidence. *Sedaghaty*, 728 F.3d 903-04; *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); *accord United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc). Rather, CIPA applies preexisting discovery law in criminal cases to classified information and restricts the discovery of classified information to protect the United States' national security interest. *See Sedaghaty*, 728 F.3d at 903–04 ("CIPA establishes procedures for handling classified information in criminal cases, so that district courts may rule on questions of admissibility involving classified information before introduction of the evidence in open court."); *see also Baptista-Rodriguez*, 17 F.3d at 1363-64; *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) (noting that CIPA creates no new rules of evidence regarding admissibility, but rather mandates procedures that protect the government's privilege in classified information); *Sarkissian,* 841 F.2d at 965 (Congress intended CIPA to "clarify the court's power to restrict discovery of

classified information"). Therefore, "[w]hile CIPA creates no new rule of evidence regarding admissibility, the procedures it mandates protect a government privilege in classified information similar to the informant's privilege . . . ." *Yunis*, 867 F.2d 617 at 623.[1]

The United States may produce discoverable information to the defense in cases involving classified information, but the discovery of classified information must be actually "helpful to the defense of the accused." *Yunis*, 867 F.2d 617 at 621 (stating "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege"; instead, "the threshold for discovery in this context further requires that a defendant seeking classified information is entitled only to information that is at least 'helpful to the defense of [the] accused'"); *see United States v. Shih*, 73 F.4th 1077, 1102 (9th Cir. 2023) (quoting *Sedaghaty*, 728 F.3d at 904) (stating that the district court is within its authority to withhold disclosure of classified information that is not "relevant" or "helpful" to the defense). CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *accord United States v. McVeigh*, 923 F. Supp 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the scope of discovery or of *Brady*."). Numerous circuits have held the "relevant and helpful" standard

---

[1] The D.C. Circuit recognized that the government's privilege concerns not merely the content of any particular conversation, but the privilege often involves the government's ability to collect the information:

> [T]he government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all. Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods. Implicit in the whole concept of an informant-type privilege is the necessity that information-gathering agencies protect from compromise "intelligence sources and methods." The Supreme Court has expressly recognized the legitimacy of this concern in construing the National Security Act of 1947, 61 Stat. 498, 50 U.S.C. § 403(d)(3), in *CIA v. Sims*, 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985).

*Yunis*, 867 F.2d at 623. Thus, courts understand the need to protect the sources and methods of collecting information as well as the information itself.

first established by *Yunis* applies to the discovery of classified information. *See, e.g., United States v. Moussaoui, 382 F.3d 453, 472 (4th Cir. 2004); Klimavicius–Viloria,* 144 F.3d at 1261 (9th Cir.); *United States v. Aref,* 533 F.3d 72, 79–80 (2d Cir. 2008); *Varca,* 896 F.2d at 905 (5th Cir.); *United States v. Amawi,* 695 F.3d 457, 475 (6th Cir. 2012) (quoting *Yunis* and finding the classified information at issue not "relevant and helpful to the defense."); *United States v. Hanna,* 661 F.3d 271, 295 (6th Cir. 2011) (affirming the trial court's *ex parte* and *in camera* decision that classified information was not actually helpful to the defense).

Accordingly, pursuant to CIPA Section 4, district courts have the opportunity to assess whether, and the extent to which, specified items of classified information should be disclosed. District courts employ a three-step analysis to review the United States' CIPA Section 4 submissions requesting a court's approval to withhold, or "delete," discovery of classified information. First, the Court must determine whether the classified information is discoverable under the traditional rules of criminal discovery. *Sedaghaty,* 728 F.3d at 904 (citing *United States v. Rewald,* 889 F.2d 836, 847-48 (9th Cir. 1989)). Second, the Court must assess whether the United States has properly asserted a privilege over the classified information. *Id.*[2] Third, the Court must consider whether the classified information at issue is both "relevant and helpful to the

---

[2] To invoke CIPA's procedures under Section 4, the United States must establish that the information is indeed classified. *See Klimavicius-Viloria,* 144 F.3d at 1261; *Sarkissian,* 841 F.2d at 965-66; *Mejia,* 448 F.3d at 456. To do so, the United States ordinarily submits a declaration executed by an official with classification review authority (1) describing the reasons for the classification of the information at issue; and (2) setting forth the potential harm to national security that could result from its disclosure. *See United States v. Libby,* 429 F. Supp. 2d 18, 22 (D.D.C. Apr. 5, 2006), *amended by United States v. Libby,* 429 F.Supp. 2d 46, 47 (D.D.C. May 3, 2006). Courts have recognized that the determination of whether to classify information and the proper classification thereof is a matter committed solely to the Executive Branch: "The Government . . . may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it." *Smith,* 750 F.2d 1215 at 1217 (4th Cir. 1984) *vacated on other grounds,* 780 F.2d 1102 (4th Cir. 1985); *See also United States v. Abu Ali,* 528 F.3d 210, 253 (4th Cir. 2008) ("[W]e have no authority [] to consider judgments made by the Attorney General concerning the extent to which information in issue here implicates national security."); *United States v. El-Mezain,* 664 F.3d 467, 523 (5th Cir. 2011) (declining to "second guess . . . the Government's determination of what is properly considered classified information."); *United States v. Musa,* 833 F.Supp. 752, 755 (E.D. Mo. 1993) ("The determination whether to designate information as classified is a matter committed to the executive branch.").

6

defense of an accused." *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). Classified information that is not relevant and helpful to the defense may be "deleted," that is, withheld from discovery; classified information that is relevant and helpful to the defense must be produced to the defense, and the United States may make such productions through substituted summaries, if the statement or summary of the classified information would provide the defendant with "substantially the same ability to make his defense as would disclosure of the specific classified information." *Id.* (citing 18 U.S.C. App. 3 § 6(c)(1)).[3]

## I.      Section 1: Definitions

Under CIPA, and as set forth above, "classified information" includes "any information or material that has been determined by the United States government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3 § 1(a). "National security" means "the national defense and foreign relations of the United States." *Id.* § 1(b). *See also* Executive Order 13,526 (defining classified information).

CIPA applies equally to classified testimony and classified documents. *See e.g., United States v. Lee*, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing *United States v. North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); *Kasi v. Angelone*, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

## II.     Section 2: Pretrial Conference

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified

---

[3] A defendant may be permitted to file his own *ex parte* submission outlining his theory of the defense to aid the court in the review of any classified materials. *See Sedaghaty*, 728 F.3d at 906 n.10; *see also United States v. Abdul-Latif*, CR11-0228JLR, Dkt. 87 (Order Granting Government's In Camera, Ex Parte Motion) (W.D. Wash. 2012).

information that may arise in connection with the prosecution." 18 U.S.C. App. 3 at § 2. Once a party files such a motion, Section 2 states that the district court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id*. During the Section 2 pretrial conference, district courts generally establish the trial schedule for the case, including the timing of discovery requests by the defense, the defense's pretrial notice to the United States under CIPA Section 5 (whereby the defendant identifies an intent to disclose classified information, if any, and explaining the need for such a disclosure), and hearings concerning the use, relevance, and admissibility of classified information pursuant to CIPA Section 6. *Id*. In addition, the Court may consider any matters that relate to classified information or that may promote a fair and expeditious trial. *Id.*

No substantive issues concerning the use of classified information are to be decided in a Section 2 pretrial conference. *See* S. Rep. No. 96-823, at 5-6, reprinted in 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.). To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant, or his attorney, at the Section 2 pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. *See* 18 U.S.C. App. 3 § 2.

### III.     Section 3: Protective Order

CIPA Section 3 mandates that federal district courts issue a protective order upon motion by the United States to protect against the improper disclosure of any classified information produced by the United States to the defense. *Id*. § 3. Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," *Pappas*, 94 F.3d at 801, as well as to supplement the Court's authority under Federal Rule of

Criminal Procedure 16(d)(1) to issue protective orders in connection with the discovery process.[4] In contrast to Rule 16(d)(1)'s discretionary authority, however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, *e.g. Brady* and Jencks material." *Id.*[5] Protective orders issued under CIPA generally set forth rules for all parties governing the use and storage of classified information and provide for the appointment of a CISO who will assist the court and parties with the logistics and processes for producing, storing, filing, and handling classified information.

## IV.    Section 4: Protection of Classified Information During Discovery

Both CIPA Section 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the United States to submit *ex parte* motions seeking an *in camera* review of classified information that may be potentially discoverable in a federal criminal case. Section 4 of CIPA expressly authorizes federal district courts to deny, or otherwise restrict, discovery of classified documents and information in the possession, custody, or control of the United States. 18 U.S.C. App. 3 § 4; *see e.g. United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *Yunis*, 867 F. 2d at 619-625. Similarly, the Federal Rules of Criminal Procedure provide, in pertinent part, that district courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The legislative history of CIPA makes clear

---

[4] Rule 16(d)(1) provides in relevant part that "at any time the court may, for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief."

[5] Notably, possession of a security clearance does not automatically entitle its possessor to access classified information. *United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) *supplemented*, 761 F.3d 678 (7th Cir. 2014) and *cert. denied*, No. 14-794, 2015 WL 731943 (U.S. Feb. 23, 2015). Without a "need-to-know," a defense counsel's security clearance does not allow him or her access to classified information. *Id.*; *see Sedaghaty*, 728 F.3d at 909 (stating even if defense counsel hold appropriate security clearances, it "does not mean that [they are] entitled to access the government's classified filings"). In addition, the United States' interest in maintaining the confidentiality of classified information is not diminished because defense counsel possesses a security clearance to review classified material. *El-Mezain*, 664 F.3d at 568.

that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny, or restrict, discovery to protect national security. *See* S. Rep. No. 96-823 at 6, *reprinted in* 1980 U.S.C.C.A.N. at 4299-4300; *see also Klimavicius-Viloria*, 144 F.3d 1249, 1261; *Baptista-Rodriguez*, 17 F.3d at 1363-64; *Yunis*, 867 F.2d at 721; *Smith*, 780 F.2d at 1110 (holding the defendant's right to discovery must be balanced against public's interest in nondisclosure); *United States v. Pringle*, 751 F. 2d 419, 427 (1st Cir. 1985).

Section 4 provides that a district court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The Court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the Court alone. 18 U.S.C. App. 3 § 4.

Like Federal Rule of Criminal Procedure 16(d)(1), Section 4 provides that the United States may demonstrate that the use of alternatives is warranted through an *in camera*, *ex parte* submission to the Court. *Id.*; *see also United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2nd Cir. 2010); *Aref*, 533 F.3d at 81; *Yunis*, 867 F.2d at 622-23; *Sarkissian*, 841 F.2d at 965; *Pringle*, 751 F.2d at 427. In essence, Section 4 allows the United States to request *ex parte* and *in camera* review of its decisions regarding the discoverability of classified information and, if determined to be discoverable, whether government-proposed summaries, or substitutions, would place the defendant in substantially the same position as the underlying classified information. *See*, *e.g.*, *Amawi*, 695 F.3d at 472-473 (noting that "every court that has considered this issue has held that CIPA permits *ex parte* hearings"); *Hanna*, 661 F.3d at 295; *Libby*, 429 F. Supp. 2d at 22, *amended*

*by United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. May 3, 2006). District courts may then issue orders approving of the government-proposed summaries and substitutions, which the United States would produce to the defense.[6] For example, the United States may request that the Court approve of its decision to deny discovery of a classified document in its entirety pursuant to Section 4 because the document is not discoverable under the relevant legal standard. *Amawi*, 695 F.3d at 472-73; *Hanna*, 661 F.3d at 295-96. In the alternative, the United States may file a motion under Section 4 to delete specific classified information from a document that otherwise contains discoverable information, or to substitute an unclassified summary, in lieu of the underlying classified document. *Id.* The United States' Section 4 filings, including all attachments, must remain *ex parte* and *in camera*, under seal, and preserved in the record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. 3 § 4.

## V.      Sections 5 and 6: Procedure for Cases Involving Classified Information Possessed by the Defendant

Sections 5 and 6 of CIPA apply when a criminal defendant who possesses classified information seeks to disclose such information during the course of a trial, or in a pretrial proceeding, regardless of whether the information comes from classified discovery or the defendant's own knowledge, and regardless of whether the information is likely to be elicited on direct or cross-examination. *See, e.g., Baptista-Rodriguez*, 17 F.3d at 1363; *Sarkissian*, 841 F.2d at 965-66; *United States v. Collins*, 720 F.2d 1195, 1199-1200 (11th Cir. 1983). Section 5 requires the defendant to provide timely written notice to the Court and the United States describing any classified information that the defendant reasonably expects to disclose during any pretrial, or trial,

---

[6] As set forth above, the United States' discovery review of classified information is consistent with Rule 16, *Brady v. Maryland* (373 U.S. 83 (1963)), *Giglio v. United States* (405 U.S. 150 (1972)), the Jencks Act, and other discovery requirements. The United States will produce in original form or through an appropriate summary or substitution, any information that is relevant and helpful to the material preparation of the defense. *See, e.g., Amawi,* 695 F.3d at 472-473*; Hanna,* 661 F.3d at 295.

proceeding. *See* 18 U.S.C. App. 3 § 5(a). The defendant must provide notice "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id*. Although the description of the classified information may be brief, it must be particularized and set forth the specific classified information that the defendant reasonably believes to be necessary for the defense. *See Collins*, 720 F.2d at 1199. A district court "must not countenance a Section 5(a) notice which allows a defendant to cloak his intentions and leave the government subject to surprise at what may be revealed in the defense. To do so would merely require the defendant to reduce 'greymail' to writing." *Id*. at 1199-1200. The defendant must provide formal notice under Section 5 even if the United States knows the defendant may assert a defense involving classified information. *See United States v. Badia*, 827 F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information until after (1) providing notice, (2) allowing the United States to seek a determination of the use, relevance, and admissibility of such information under Section 6, and (3) the time for any interlocutory appeal permitted under Section 7 expires. 18 U.S.C. App. 3 § 5(a). If the defendant fails to provide the requisite pretrial notice, the Court may prohibit the disclosure of the classified information by the defense, and it may prohibit the defendant from examining any witness with respect to such information. *Id*. § 5(b).

After the defendant files notice under Section 5 of CIPA, the United States may request that the Court conduct a hearing to make "all determinations concerning the use, relevance, or admissibility" of the defense-noticed classified information. 18 U.S.C. App. 3 § 6(a). Upon such a request, the court shall conduct such a hearing, and it must conduct the hearing *in camera* if the Attorney General certifies to the Court that a public proceeding may result in the disclosure of classified information. *Id*. Prior to the hearing, the United States must first provide the defendant

with notice of the classified information that will be at issue. *Id*. § 6(b)(1). If the particular information previously was not available to the defendant, the United States may, with the Court's approval, provide a generic description of the material to the defendant. *Id*. Thus, as Congress recognized in enacting CIPA, "the government would not have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval." S. Rep. No. 96-823, at 8, 1980 U.S.C.C.A.N. at 4301. The Court also may order the United States to provide the defendant with "details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." 18 U.S.C. App. 3 § 6(b)(2).

If the defense has indicated that it intends to seek to introduce into evidence classified information and the government seeks to protect that information from disclosure, the Court at the Section 6(a) hearing hears the defense proffer and the arguments of counsel, then rules whether the classified information identified by the defense is relevant under Rule 401 of the Federal Rules of Evidence. *See Yunis*, 867 F.2d at 622; *Smith*, 780 F.2d at 1105-06. The Court's inquiry does not end there, however, because under Rule 402 of the Federal Rules of Evidence, "[n]ot all relevant evidence is admissible at trial." *Smith*, 780 F.2d at 1106. The Court must also determine whether the evidence is cumulative, prejudicial, confusing, or misleading such that it should be excluded under Rule 403. *See United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984). At the conclusion of the Section 6(a) hearing, the district court's ruling must be in writing and should set forth the basis for its determination as to each item of classified information. 18 U.S.C. App. 3 § 6(a).

If the Court finds the classified information useful, relevant, or otherwise admissible, the United States may ask for the Court to approve (1) the government-proposed substitution of a

statement admitting relevant facts that the specific classified information would tend to prove, or (2) the government-proposed substitution of a summary of the classified information. *Id*. § 6(c)(1).[7] Section 6 authorizes substitutions for classified material in the form of "redactions and substitutions so long as these alternatives do not deprive the defendant of a fair trial." 18 U.S.C. App. 3 § 6(c)(1)(A), (B); *see Abu Ali*, 528 F.3d at 255. The Court must grant the motion for substitution if it finds that the admission or summary "will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. App. 3 § 6(c)(1).

Any hearing under Section 6(c) shall be held in camera at the request of the Attorney General. *Id.* § 6(c)(1). In connection with a hearing, the government may submit to the Court an affidavit of the Attorney General certifying that disclosure of classified information would cause identifiable damage to national security and explaining the basis for the classification of that information. A court must review that affidavit in camera and ex parte if requested by the government. *Id.* § 6(c)(2). The Court shall seal and preserve the record of any in camera hearing at the close of which the Court determines that classified information may not be disclosed or elicited at trial or a pretrial proceeding. *Id.* § 6(d).

If the Court denies the United States' motion for substitution under Section 6(c), CIPA permits the United States, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue. *Id*. § 6(e)(1). Upon the United States' filing of the Attorney General's affidavit, the Court "shall order that the defendant not disclose or cause the disclosure of such information," and it may impose a sanction against the United States to compensate for

---

[7] Substitutions and summaries are not the only means by which the government may seek judicial approval to protect classified information from public disclosure. Additional measures, such as the "Silent Witness Rule," may be proposed to protect classified information from unauthorized public disclosure. *See, e.g.*, *United States v. Mallory*, 40 F.4th 166, 174-78 (4th Cir. 2022).

14

the defendant's inability to present proof of the specific item of classified information. *See* S. Rep. 96-823 at 9, *reprinted in* 1980 U.S.C.C.A.N. at 4302-3. Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the United States on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment. 18 U.S.C. App. 3 § 6(e)(2). An order imposing a sanction shall not take effect until the United States has the opportunity to appeal the order under Section 7, or thereafter withdraw its objection to the disclosure of the information. *Id*. § 7.

Whenever the Court rules at a Section 6(a) hearing that classified information is admissible, the Court must require the United States to provide the defendant with information it expects to use to rebut the classified information, "unless the interests of fairness do not so require." *Id*. § 6(f). The Court may place the United States under a continuing duty to disclose rebuttal information. *Id*. If the United States fails to comply, the Court may exclude the rebuttal evidence and prohibit the United States from examining any witness with respect to such information. *Id*.

## VI.     Section 7: Interlocutory Appeal

Section 7 permits the United States to take an expedited interlocutory appeal to the appellate court if the district court (a) authorizes the disclosure of classified information, (b) imposes sanctions for nondisclosure of classified information, or (c) refuses to issue a protective order sought by the United States to prevent the disclosure of classified information. *Id*. § 7. If an appeal is taken, the Court must not commence the trial until the appeal is resolved. *Id*. Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal upon conviction (if any) of an adverse ruling by the trial court. *Id*. § 7(b).

## VII.    Section 8: Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. *Id*. § 8. Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status. This provision allows the classifying agency, upon completion of the trial, to decide whether information has been so compromised that it could no longer be regarded as classified. *See* S. Rep. No. 96-823 at 10, *reprinted in* 1980 U.S.C.C.A.N. at 4304.

Section 8(b) permits the Court to order admission into evidence of only a part of a document when fairness does not require the whole document to be considered by the factfinder. The purpose of this provision is to clarify Federal Rule of Evidence 106, known as the rule of completeness, in order to prevent unnecessary disclosure of classified information. *Id*. at 10-11, *reprinted in* 1980 U.S.C.C.A.N. at 4304.

Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question, or embarks on a line of inquiry, that would require the witness to disclose classified information. *Id*. at 11, *reprinted in* 1980 U.S.C.C.A.N. at 4304. Specifically, under Section 8(c), the United States may object to any question, or line of inquiry, that may require the witness to disclose classified information not previously held to be admissible. 18 U.S.C. App. 3 § 8(c). Following an objection, the Court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information." *Id*. In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense does not realize that the answer to a given question will reveal classified information. S. Rep. No. 96-823 at 11, *reprinted in* 1980 U.S.C.C.A.N. at 4304-5.

## VIII.   Section 9: Security Procedures

Section 9 requires the Chief Justice of the United States, in consultation with other executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure. 18 U.S.C. App. 3 § 9(a). Security Procedures established pursuant to this provision are codified directly following Section 9 of CIPA.

## IX.   Section 10: Identification of Information Related to the National Defense

This section applies in criminal prosecutions, like this case, in which the United States must prove as an element of the crime charged that certain material relates to the national defense, or otherwise constitutes classified information. *See* S. Rep. 96-823 at 11-12, *reprinted in* 1980 U.S.C.C.A.N. at 4305. In such a circumstance, Section 10 requires the United States to inform the defendant of which portions of the material it reasonably expects to rely upon to prove the classified-information element of the crime. 18 U.S.C. App. 3 § 10. Section 10 likely will not be applicable in this case.

## X.   Sections 11-15: Miscellaneous Provisions

The remaining sections of CIPA contain various miscellaneous provisions. Section 11 provides for amendments to Sections 1 through 10 of CIPA. Section 12 requires the Attorney General to issue guidelines regarding the exercise of prosecutorial discretion over cases in which classified information may be revealed and requires preparation of written findings when prosecution of such cases is declined. Section 13 requires the Attorney General periodically to report such declination decisions to Congress and, when necessary, to report on the operation and effectiveness of CIPA. Section 14 identifies the senior officials to whom the functions and duties

17

of the Attorney General under CIPA may be delegated. Section 15 provides the effective date of CIPA.

### REQUEST FOR PRETRIAL CONFERENCE UNDER CIPA SECTION 2

The United States is in the process of identifying and reviewing material that is currently classified. Some of this material may be subject to disclosure in advance of trial and could raise issues of national security that the Court will need to address under CIPA. Accordingly, pursuant to Section 2 of CIPA, the United States respectfully requests that the Court schedule a Section 2 pretrial conference to establish a discovery and motion schedule relating to any classified information.[8]

At the Section 2 pretrial conference, the United States will provide an estimate of the time necessary to conduct its complete review of the classified information. Based on that estimate, the United States will provide a proposed schedule for the filing of motions under CIPA Section 3 relating to protective orders and under CIPA Section 4 relating to the deletion, substitution, or disclosure of classified information, as well as for the defendant's provision of notice pursuant to CIPA Section 5 and the initiation of any necessary procedures under CIPA Section 6. Because of the classified nature of certain information, the United States will be unable to provide the Court with specifics in open court (e.g., the type of information at issue, the amount of information at issue, the period of time when such information was collected, which agencies are involved, etc.). If the Court so directs, the United States will be prepared to present this information to the Court orally in an *ex parte*, *in camera* hearing. As previously noted, courts have consistently held that *in*

---

[8] As set forth above, under Section 2 of CIPA, any party may move for a pretrial conference to "consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3, § 2. Once such a motion is filed, the Court "shall promptly hold a pretrial conference." *Id.* At the conference, the Court should "establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.*

*camera*, *ex parte* submission to a district court in matters involving national security are proper. *See, e.g., United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006); *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003); *Pringle*, 751 F.2d at 427.

**MOTION TO DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER**

Additionally, in anticipation of the issues that may arise in this case, the United States requests that the Court designate a CISO pursuant to Section 2 of the Revised Security Procedures established under Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States and promulgated pursuant to Section 9 of CIPA. That section provides: In any proceeding in a criminal case or appeal therefrom in which classified information is within, or is reasonably expected to be within, the custody of the Court, the Court will designate a "classified information security officer." The Attorney General or the Department of Justice Security Officer will recommend to the Court a person qualified to serve as a classified information security officer. This individual will be selected from the Litigation Security Group, Security and Emergency Planning Staff, Department of Justice, to be detailed to the Court to serve in a neutral capacity.

Revised Security Procedures established under Pub. L. 96-456, 94 Stat. 2025 § 2. *See* CIPA, Pub. L. 96-456 § 9, 94 Stat. 2025 (1980) (found in the statutory notes to § 9). Classified Information Security Officers[9] designated pursuant to this process are responsible for the security of all classified information in the Court's custody and assist the Court with appropriate security clearances for Court staff as well as the handling and storage of any classified materials including any pleadings or other filings related to CIPA proceedings. *Id*.

---

[9] In the original Security Procedures, the title of the position was "Court Security Officer." In the revised security procedures promulgated by Chief Justice Roberts, the position is now known as "Classified Information Security Officer," commonly referred to as a "CISO."

As set forth in the attached proposed order, the United States recommends that the Court designate Harry Rucker, Supervisory Security Specialist, as the CISO for this case, to perform the duties and responsibilities prescribed for CISO's in the Security Procedures promulgated by the Chief Justice. Mr. Rucker is an employee of the Litigation Security Group of the U.S. Department of Justice with demonstrated competence in security matters. The Department of Justice Security Officer will certify that Mr. Rucker holds all proper security clearances by separate written correspondence officially nominating Mr. Rucker as CISO. The United States further requests that the Court designate the following persons as alternate CISOs, to serve in the event Mr. Rucker is unavailable: Jennifer H. Campbell, Daniel O. Hartenstine, Daniella M. Medel, Matthew W. Mullery, and Winfield S. "Scooter" Slade. Each of these alternate CISOs are also from the Litigation Security Group of the Department of Justice and hold appropriate security clearances.

## CONCLUSION

The United States anticipates that issues relating to classified information may arise in connection with this case. Accordingly, the United States respectfully provides this memorandum of law to provide the Court with a detailed description of CIPA's procedures to address issues related to classified information and to protect any such classified information before, during, and after trial in this case. The United States notes that some of the CIPA sections outlined above may not be invoked or need to be addressed. For the foregoing reasons, pursuant to CIPA Section 2, the United States respectfully requests that the Court schedule a Section 2 pretrial conference at a mutually convenient time to address scheduling matters in light of the existence of classified materials, so that the government can explain the CIPA process and answer any questions that the

Court may have. For scheduling purposes, the United States requests the Section 2 pretrial conference be held approximately 30 days after the initial motion hearing in this matter.

In addition, the United States respectfully requests that the Court enter the attached proposed order, appointing a CISO and alternate CISOs in this matter to assist the Court, Court personnel, and the parties in any further matters related to CIPA.

Respectfully Submitted,

Jessica D. Aber
United States Attorney


By: _____/s/_____
Anthony J. Rodregous
Troy A. Edwards, Jr.
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3964
Fax: (703) 299-3980
E-mail: Anthony.Rodregous@usdoj.gov

Brett C. Reynolds
Trial Attorney, National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530