IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ASIF WILLIAM RAHMAN,<br><br>              Defendant | Case No. 1:24-CR-249 (PTG) |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE CONSIDERATION OF CERTAIN SENTENCING MATERIALS

The defendant, Asif William Rahman, moves to preclude the Court from considering at sentencing certain materials the government submitted—including an unclassified letter from the defendant's prior employer, classified declarations and attachments from various United States Intelligence agencies, and a classified memorandum in support of the government's request for an upward variance. The government's submissions, however, far surpass the minimal level of indicia of reliability required for the Court to consider them at sentencing. Respectfully, the defendant's motion should be denied. Should the Court do so, the government is willing to address these and other issues further in both classified and unclassified sentencing hearings.

### BACKGROUND

On November 7, 2024, a grand jury sitting in the Eastern District of Virginia returned an indictment charging Asif William Rahman, who was then employed as a Central Intelligence Agency analyst, with two counts of willful retention and transmission of national defense information (NDI), in violation of 18 U.S.C. § 793(e). Presentence Investigation Report (PSR) at ¶ 1. On November 12, 2024, the Federal Bureau of Investigation (FBI) arrested the defendant overseas. *Id*. On November 14, 2024, the defendant appeared for an initial appearance in the District of Guam, and the government filed a writ of removal to the Eastern District of Virginia.

ECF 8.

On December 5, 2024, the defendant appeared in the Eastern District of Virginia for an initial appearance.  ECF 11.  On December 6, 2024, a United States Magistrate Judge released the defendant after a detention hearing.  ECF 20.  The government filed a motion to stay and notice of appeal of the Magistrate Judge's decision.  ECF 22.  This Court granted the government's motion.  ECF 23.  On December 11, 2024, the Court held a hearing for the government's appeal of the Magistrate Judge's detention decision, and the Court detained the defendant pending trial.  ECF 28.  On December 11, 2024, the defendant noticed his appeal of the Court's decision.  ECF 31.  The defendant filed his opening brief on December 20, 2024, and the government filed its response on December 31, 2024.  On January 6, 2025, the Fourth Circuit Court of Appeals denied the defendant's appeal of the Court's decision.  ECF 45, 46.

Meanwhile, the parties met to discuss potential pretrial resolutions despite the defendant's ongoing litigation regarding his pretrial detention and the government's motion to certify the case as complex under the Speedy Trial Act under 18 U.S.C. § 3161.  On December 10, 2024, the parties engaged in an attorneys-only reverse proffer in a sensitive compartmented information facility (SCIF) at the United States Department of Justice.  The government presented defense counsel with approximately 50 pages of materials the government would later re-provide on May 7, 2025, that the defense now moves to preclude.  On December 31, 2024 and January 3, 2025, the defendant sat with the government for two proffer sessions.

On January 17, 2025, the defendant appeared before this Court and entered a plea of guilty to Counts One and Two of the Indictment.  *Id*. at ¶ 2.  The defendant agreed that he unlawfully transmitted Secret, Top Secret, and Top Secret/SCI information and documents in the spring of 2024, the fall of 2024, and in October 2024.  ECF 58 at 3-6.  In his plea agreement, the parties

2

agreed that his Criminal History Category was I and that his Estimated Offense Level was 26, and so the parties agreed to stipulate and recommend to the Court that his Estimated Applicable Guidelines Range was 63-78 months. ECF 57 at 4. The parties agreed that neither a downward nor an upward departure from the Estimated Applicable Guidelines Range was warranted, other than a potential downward departure related to the defendant's cooperation under U.S. Sentencing Guidelines Section 5K1.1. *Id*. Finally, in relevant part, the parties agreed:

> The United States and the defendant have not agreed on any further sentencing issues, whether related to the Sentencing Guidelines or the factors listed in 18 U.S.C. § 3553(a), other than those set forth above or elsewhere in this Plea Agreement. Any stipulation on a Guidelines provision does not limit the parties' arguments as to any sentencing factors under Section 3553(a), including arguments for a sentence within or outside the advisory Guidelines range found by the Court at sentencing.

*Id*. at 5.

As for the defendant's cooperation, the defendant agreed to cooperate fully and truthfully with the United States, and provide all information known to the defendant regarding any criminal activity as requested by the government. *Id*. at 9. And, as it relates to sentencing, the government agreed not to use truthful information the defendant provided under this agreement in determining the applicable guidelines range, pursuant to U.S.S.G. § 1B1.8. *Id*. at 10. "Nothing in this agreement," the parties agreed, "restricts the Court's or Probation Officer's access to information and records in the possession of the United States." *Id*. In March 2025, the defendant met with the government and various agencies on three separate occasions as part of his cooperation plea agreement.

In various calls with defense counsel throughout April 2025, the government informed the defense that it anticipated receiving declarations from various United States Intelligence agencies related to this case that the government intended to provide to both the defense and the Court along

3

with its sentencing memorandum. Indeed, the government worked with the Classified Information Security Officer to provide the defense and certain Court staff the necessary "read-ins" to review some of the underlying attachments in the lead up to the filing deadlines. On May 2, 2025, the government informed defense counsel that the government intended to request a downward departure pursuant to the defendant's cooperation and Guidelines § 5K1.1. In a call on May 6, 2025, the government informed defense counsel prior to filing its sentencing memorandum that the government intended to seek an upward variance based on information in its possession separate and apart from the defendant's cooperation.

On May 6, 2025, the defendant filed a sentencing memorandum, recommending a sentence of 13 months' imprisonment—a 50-month downward variance from the low-end of the agreed-upon applicable Guidelines range. ECF 70. The government filed an unclassified sentencing memorandum, moving for a downward departure of one offense level under Guidelines § 5K1.1 to bring the applicable Guidelines range to 57-71 months' imprisonment. ECF 72. The government ultimately requested an upward variance and a sentence of 108 months—a 30-month upward variance from the high-end of the agreed-upon Guidelines range. ECF 72.

Deputy Director of the CIA Michael Ellis sent the government a letter on May 5, 2025, which the government included as part of its unclassified filing on May 6. ECF 72-1. In the week leading up to May 6, 2025, filing deadline, the government received multiple signed declarations with underlying attachments from United States Intelligence agencies—including the approximately 50 pages the government had previously shown defense counsel in December 2024. Upon receiving these materials, the government drafted a classified supplemental sentencing memorandum for the Court's consideration, detailing the potential harm to the government of the defendant's actions in support of the government's request for an upward variance under Section

4

3553(a). Notably, the government only relied on evidence it possessed separate and apart from the defendant's cooperation, detailing the dates and sources of that evidence and explicitly stating what cooperation evidence the government was *not* relying on in the underlying classified materials. The government submitted the unclassified letter and classified materials to the Classified Information Security Officer, who physically picked them up on the morning of May 7, 2025, to deliver them to both defense counsel and the Court. ECF 73.

## ARGUMENT

The defendant now raises a number of arguments to preclude the Court from considering the government's unclassified letter and classified submissions in support of its argument seeking an upward variance under Section 3553(a). The defendant's arguments miss the mark and should be denied.

*First*, the defendant repeatedly characterizes the government's classified sentencing submissions as "late," "late-submitted," and "eleventh-hour" in arguing that the "late-disclosure of classified information precludes Mr. Rahman's counsel from meaningfully challenging them." ECF 86 at 1, 2, 3, 4, 6. Specifically, the defendant claims that, on May 8, "the government for the first time permitted counsel for Mr. Rahman to view the more than 150 pages of classified arguments and conclusory declarations underlying its position on sentencing." *Id*. at 2. "The government," the defendant argues, "has provided no reason why this classified information could not have been presented weeks or months ago when the sentencing date was scheduled," calling the government's submission an "ambush[]." *Id*. at 4. The government, however, provided the defense with over 50 pages of these materials in December 2024 as part of a classified reverse proffer before the defendant began cooperating—over five months before the sentencing hearing. The remaining pages are largely the declarations the agencies had just created and provided to the

5

prosecution team and the government's own classified supplemental memorandum that was not due until May 6. In any event, despite the defendant's rhetoric and arguments stressing the materials' alleged tardiness, he does not request more time. *Id*. at 2 n.1 ("[A]dditional time does not . . . affect the fundamental unfairness of the government's late disclosure of this classified material."). Indeed, presented with an option of either May 19 or late June 2025 for a new sentencing hearing, the defendant chose the former. ECF 87. Regardless, the Court has rescheduled the sentencing hearing to a date to be determined, and the government does not oppose continuing the sentencing hearing to provide defense counsel additional time to review the submissions and file a response should the defendant choose to do so.

*Second*, the thrust of the defendant's argument to preclude the Court from considering the government's classified submissions is that "due process forbids reliance on materially false or unreliable information in imposing a sentence." *Id*. at 3 (quoting *United States v. Yeigh*, 725 F. App'x 207, 209 (4th Cir. 2018)). Beyond simply stating that premise, however, the defendant does not grapple with the underlying law or facts that make clear the Court may in fact rely on the materials at issue.

As to the law, the sentencing court's broad discretion and the near-limitless boundaries of what it can consider at sentencing are well-established. "[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him [or her] in determining the kind and extent of punishment to be imposed within limits fixed by law." *Witte v. United States*, 515 U.S. 389, 397-98 (1995) (citing *Williams v. New York*, 337 U.S. 241, 246 (1949)) (cleaned up). "That history, combined with a recognition of the need for individualized sentencing" has led the Supreme Court to conclude that "the Due Process Clause

did not require that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence." *Id*. at 398 (cleaned up); *see also Pepper v. United States*, 562 U.S. 476, 488 (2011) (stressing the need to permit "sentencing courts to consider the *widest possible breadth* of information about a defendant," because "highly relevant—if not essential—to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics") (cleaned up) (emphasis added). "Thus, as a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he [or she] may consider, or the source from which it may come." *Id*. (citing *Nichols v. United States*, 511 U.S. 738, 747 (1994)) (cleaned up).

      This Circuit has historically followed the same practice. The defendant posits that he faces "substantial prejudice" if the Court considers the "classified information in this case in conclusory form, not presented in any trial or even an evidentiary hearing." ECF 86 at 6. But this argument "ignores the fundamental differences between trial and sentencing." *United States v. Powell*, 65 F.3d 388, 391 (4th Cir. 2011). "Once the accused has been properly convicted . . . the purposes of the proceeding—and the evidentiary rules governing it—change." *Id*. "Congress has *instructed* sentencing judges to consider a host of fact-intensive issues when imposing sentence, including the particular defendant's background and conduct, the need to punish and deter criminal wrongdoing, and the need to eliminate unjustified sentencing disparities." *Id*. at 391-92 (citing 18 U.S.C. § 3553(a)) (emphasis added). "To accomplish these ends and to realize the principle that the punishment should fit the offender and not merely the crime, the sentencing judge must have recourse to a much broader array of information than we allow the trier of fact to consider in determining a defendant's guilt." *Id*. at 392 (citing *Pepper*, 562 U.S. at 487-88) (cleaned up); *see*

7

*also Williams*, 337 U.S. at 247. "Courts have accordingly long recognized that sentencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence." *Id*. (citing *Payne v. Tennessee*, 501 U.S. 808, 820-21 (1991) ("Whatever the prevailing sentencing philosophy, the sentencing authority has always been free to consider a wide range of relevant material.")); *see also Witte*, 515 U.S. at 397-401 (noting that sentencing courts have traditionally considered a wide range of information without the procedural protections of a criminal trial, including information concerning uncharged criminal conduct, in sentencing a defendant within the range authorized by statute). Far from "backdoor[ing]" these materials into the case at sentencing, ECF 86 at 6, the government is providing highly relevant, reliable information for the Court to consider the defendant's conduct in determining a just sentence as it is required to do by law.

Indeed, the defendant's cited case, *Yeigh*, embodies these standards as an example of the *government's* position. There, the defendant claimed that the sentencing court erroneously relied upon disputed factual allegations about his past convictions in the pre-sentence report. *Yeigh*, 725 F. App'x at 209. The Fourth Circuit rejected the defendant's argument. "A sentencing court," the Fourth Circuit explained, "may rely on *any* information concerning the background, character and conduct of the defendant." *Id*. (quoting U.S.S.G. § 1B1.4) ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."). True, "due process forbids reliance on materially false or unreliable information in imposing a sentence," but the Fourth Circuit explained that "without an affirmative showing the information is inaccurate," the sentencing court was free to rely on the information at issue without more specific inquiry or explanation. *Id*. (citing *United*

*States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990)) (cleaned up).

And these sentencing principles are "grounded in the applicable criminal, evidentiary, and sentencing codes." *Id*. Pursuant to Title 18, United States Code, Section 3661, for example, Congress has dictated that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Likewise, Federal Rule of Evidence 1101(d)(3) specifically exempts sentencing proceedings from the rules of evidence. Fed. R. Evid. 1101(d)(3). Finally, Guidelines § 6A1.3(a) allows sentencing courts to consider all relevant information "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also* U.S.S.G. § 6A1.3(a), Comm. (explaining that "sentencing judges are not restricted to information that would be admissible at trial" and that any information may be considered, so long as it has sufficient indicia of reliability—even citing "out-of-court declarations by an unidentified informant" as an example).

That is what Due Process at sentencing requires: "It is well established that a court may, for purposes of sentencing, consider any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Dunlap*, No. 22-4163, 2025 WL 89078, at *5 (4th Cir. Jan. 14, 2025) (citing *United States v. Mondragon*, 860 F.3d 227, 233 (4th Cir. 2017)); *see also United States v. Banks*, 104 F.4th 496, 526 (4th Cir. 2024); *United States v. Roy*, 88 F.4th 525, 531 (4th Cir. 2023); *Powell*, 650 F.3d at 393-94; *United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010); *United States v. Bowman*, 926 F.2d 380, 381 (4th Cir. 1991)). The Fourth Circuit has referred to this as a "minimal level of reliability." *Powell*, 650 F.3d at 393. Its decisions considering various items as

9

bearing sufficient indicia of reliability illustrate how "minimal" that level is. *See, e.g.*, *United States v. Rumley*, 952 F.3d 538, 547-48 (4th Cir. 2020) (unsigned, uncertified documents); *Mondragon*, 860 F.3d at 230, 233 (co-conspirator hearsay statements to law enforcement officers in debriefs); *United States v. Hernandez-Villanueva*, 473 F.3d 118, 122 (4th Cir. 2007 (the defendant's own statements obtained in violation of *Miranda*); *United States v. Falesbork*, 5 F.3d 715, 722 (4th Cir. 1993) (uncorroborated hearsay accounts of testimony presented at other trials); *United States v. Lee*, 540 F.2d 1205, 1210 (4th Cir. 1976) (illegally-obtained evidence of the defendant's prior narcotics possession). Other Circuits have held similarly. *See, e.g.*, *United States v. Figaro-Benjamin*, 100 F.4th Cir. 294, 301 (1st Cir. 2024) ("Under this approach, the court has considerable leeway to rely upon virtually any dependable information.") (cleaned up); *United States v. Beasley*, 442 F.3d 386, 393 (6th Cir. 2006) ("As we have recognized, the Sentencing Guidelines and this circuit's case law have set a low bar for the kinds of evidence sentencing judges may rely on to decide factual issues at sentencing.") (cleaned up). At bottom, the information the Court relies on cannot be "materially false or unreliable." *Yeigh*, 725 F. App'x at 209 (citing *Townsend v. Burke*, 334 U.S. 736, 740-41 (1948)).

This is where the defendant's arguments run headfirst into the facts. The materials at issue here far surpass the low hurdle of "sufficient indicia of reliability." While the government is limited in what it can state regarding the details of its classified submission in this unclassified filing, it includes multiple, signed declarations by United States Intelligence agency officials under penalty of perjury. Each declaration provides descriptions of the official's background and role at the agency, the agency's role and activity in the United States government, and specific details about the defendant's conduct and the potential harm that conduct posed to the United States and its allies. Moreover, the materials include numerous underlying attachments documenting the

10

defendant's conduct and corroborating the declarants' submissions. Finally, the government included multiple pieces of information lawfully seized from the defendant's person and residence that further corroborate the declarations. Simply claiming the materials at issue here are "overblown," "conjectural," and "misleading," ECF 86 at 5, is insufficient and does not account for all of the corroborative information included. And, while the defendant notes that he intends to file a classified response to the government's supplemental submissions, *id*. at 6, the government submits that its submission as a whole is well within the wide array of reliable materials the Court can, and should, consider at sentencing.

The defendant's arguments regarding the Deputy Director of the CIA's letter fare no better. The document amounts to a letter from the defendant's former employer, providing a statement from a victim agency intended to convey to the Court the impact of the defendant's actions. While the government's sentencing materials, including the classified submissions, all focus on the potential harm of the defendant's conduct—in line with the statute at issue, *see* 18 U.S.C. § 793(e) (prohibiting the unauthorized disclosure of national defense information "the possessor has reason to believe *could* be used to the injury of the United States or to the advantage of any foreign nation") (emphasis added)—the letter in part highlights damage to the agency and United States supported by the defendant's admitted statement of facts. Critically, a "district court may . . . draw reasonable inferences from the facts in the record when formulating a sentence." *Roy*, 88 F.4th at 531 (citing *United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019); *United States v. Orozco-Acosta*, 607 F.3d 1156, 1166 (9th Cir. 2010); *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)). A CIA employee printing and disseminating to unauthorized individuals Top Secret information can cause serious, and in some cases exceptionally grave, harm to national security by undermining the CIA's ability to control its information and signaling to the agency's officers and

allies that the United States cannot be trusted to protect sensitive information. The specific documents the defendant disclosed in this case included planned kinetic operations against a foreign adversary of the United States, and he disclosed this information in a way that could immediately alert that adversary to the information via social media channels—and still could tomorrow, as those materials remain publicly available because of the defendant's actions. Regardless, the Court may of course review this letter and assign it any weight it deems appropriate in light of the facts adduced through the plea agreement, the sworn classified declarations, and related materials submitted in this case.

*Third*, the defendant's discovery requests documented in his discovery letter, ECF 86-1, are not pre-requisites for the Court to consider the government's submissions. The defendant demands the government provide him "any and all" factual information supporting the classified declarations and Deputy Director Ellis's letter. ECF 86-1 at 3. As a threshold matter, the case law does not impose upon the government obligations to provide "any and all" information related to materials it provides at sentencing for the Court's consideration. As detailed above, all that is necessary is that the Court be satisfied that there is a "minimal level" of reliability; here, the information hurdles that low bar. In any event, the government *did* provide defense counsel with the underlying materials in the form of numerous attachments to one of the declarations—again, many of which the government presented to the defense in a classified reverse proffer in December 2024. All despite the defendant's agreed-upon classified discovery waiver in his plea agreement. ECF 57 at 6 ("[T]he defendant knowingly, willingly, and voluntarily gives up the right to seek any additional classified discovery. Further the defendant knowingly, willingly, and voluntarily waives all pending requests for classified discovery. This waiver, however, shall not apply to any discovery that tends to negate the defendant's guilt or diminish the degree of the defendant's

culpability or the defendant's Offense Level under the U.S. Sentencing Guidelines."). Nevertheless, contrary to the defendant's claim that "[t]he government has yet to respond to the letter," the government called defense counsel on May 8, 2025, and informed them it was working to provide even more materials in light of their requests documented in both unclassified and classified discovery letters (without conceding that these materials are in any way mitigating or discoverable). The government anticipates providing these additional classified materials by the end of the week. Further, the government anticipates making nearly all of the government's classified supplemental memorandum, some of the declarations, and all of the underlying attachments available to the defendant himself by the end of the week.

The defendant's requests to cross-examine "Mr. Ellis and all other government declarants at a hearing prior to sentencing to challenge the basis and accuracy of their conclusions" likewise falls short. ECF 86-1 at 3. The "widened evidentiary universe at sentencing has always included reliable hearsay of many varieties, the Confrontation Clause notwithstanding." *Powell*, 650 F.3d at 392. Indeed, "most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." *Id*. (cleaned up); *see also Williams*, 337 U.S. at 245) (upholding a state sentencing scheme allowing consideration of evidence "obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine"). The defendant's arguments and demands appear to be premised on the erroneous notion that cross-examination is required for the Court to assess the reliability of the information. The Fourth Circuit's "accepted sentencing practices prove otherwise." *See Powell*, 650 F.3d at 394. As of May 8, 2025, defense counsel received all of the government's classified submissions, ECF 86 at 2; they intend to file separately a response that outlines "deficiencies" in the materials,

*id*. at 6; and they have additional time to do so (though, again, the defendant has not requested more time and the government would not oppose such a request), *id*. at 2 n.1; ECF 87 (requesting a new sentencing date of May 19 over late June 2025)—this is all that is required for Due Process at sentencing and the Court to consider the government's submissions.

The defendant's reliance on out-of-circuit cases to the contrary are inapt.  First, in *Fogel*, ECF 86 at 3, the D.C. Circuit affirmed the sentencing court's denial of the defendant's request to call witnesses to rebut the government's evidence, concluded the defendant must show that the government's materials are "false or unreliable," and noted that the government's submission of the materials *one business day* before the sentencing hearing did not rise to the level of a due process violation. *United States v. Fogel*, 829 F.2d 77, 90-91.  Second, in *Pugliese*, ECF 86 at 3, the Second Circuit concluded the defendant did *not* have a right to a mandatory evidentiary sentencing hearing.  *United States v. Pugliese*, 805 F.2d 1117, 1123 (2d Cir. 1986).  When the defendant challenges the veracity of the government's evidence, the court explained, "the government must introduce corroborating proof," and that "corroboration may be provided simply by a government proffer." *Id*.  While the court discussed that a defendant "*may* challenge the prosecution's affidavits, letters, and other submissions to the court," that could simply take the form of "an opportunity to comment on the report." *Id*. (emphasis added).  All that Due Process requires is that the parties have an effective opportunity to rebut allegations likely to affect the sentence. *Id*.  Finally, in *Polson*, ECF 86 at 3-4, the Seventh Circuit simply held that Due Process requires that a sentencing court afford the defendant a meaningful opportunity to rebut any contested evidence while still relying on the broad proposition that the court "is entitled to consider a broad range of information in the sentencing process." *United States v. Polson*, 285 F.3d 563, 567 (7th Cir. 2002).  There, the Circuit ultimately *allowed* the sentencing court to consider

14

evidence based on multiple levels of hearsay after it simply gave the defense an opportunity to comment on the unreliable nature of such hearsay. *Id*. at 567-68. The defense has more corroborating information, more time, and more opportunities to rebut the government's submissions than any of the defendants in their out-of-circuit cases that each affirmed the sentencing court's procedures and sentences imposed.

*Fourth*, and finally, the defendant's allegations that the government's sentencing submissions "violates the understanding that counsel had reached at the time of Mr. Rahman's plea as well as the provision in the Sentencing Guidelines precluding the government from using information provided by Mr. Rahman in the course of his cooperation against him at sentencing" are belied by the record. ECF 86 at 6 (citing United States Sentencing Guidelines § 1B1.8 & Application Note 1). As to the parties' "understanding" reached at the time of the plea, it is entirely memorialized within the four corners of the plea agreement. ECF 57. And, as noted above, the plea agreement explicitly recognized that either party was free to seek a sentence "within or outside the advisory Guidelines range found by the Court at sentencing." *Id*. at 5. The parties clearly both understood that reality: the government ultimately sought an upward variance of 30 months above the high-end of the agreed-upon Guidelines range, ECF 72, and the defendant sought a downward variance of 50 months below the low-end of that range, ECF 70.

Additionally, the parties agreed that "[n]othing in this agreement . . . restricts the Court's or Probation Officer's access to information and records in the possession of the United States." *Id*. at 10. When the government received multiple classified declarations, underlying attachments supporting those declarations, and an unclassified letter—all relevant to the defendant's conduct and behavior—the government was obligated to provide those materials to the Court so long as they were not materially false or unreliable. Indeed, the defendant's own citation to the Guidelines

15

makes that clear. *See* U.S.S.G. § 1B1.8, App. N.1 ("This provision does not authorize the government to withhold information from the court").

As to the government's alleged use of the defendant's cooperation against him at sentencing, the government's materials make clear this is untrue. The government makes clear again here: it does not in any way intend to rely on anything the government only knows from the defendant's cooperation to support its request for an upward variance. The government proceeded through its sentencing recommendation process in an appropriately iterative manner. First, it decided whether the defendant's cooperation constituted "substantial assistance" as to other individuals, warranting a downward departure motion as considered in the plea agreement, ECF 57 at 11-12, and Guidelines § 5K1.1. The government answered that in the affirmative and had some burden to illustrate to the Court why that motion is warranted, including by describing some of the defendant's cooperation. Second, the government proceeded to consider the Section 3553(a) factors to determine a just sentencing recommendation that fits within both the plea agreement and the statutory maximum sentence available under Section 793(e). The government considered evidence of the defendant's conduct *separate and apart* from what it learned as part of the defendant's cooperation and determined that an upward variance was warranted. As the Court can see in the government's materials—including its decision to submit a separate document entirely to support the request for an upward variance—the government aimed to explicitly highlight the evidence it possessed apart from the defendant's cooperation while also explicitly noting what the government learned from some of his cooperation that it was not relying on. This was necessary for the government to consider, as it must, both the cooperation under Guidelines § 5K1.1 *and* the Section 3553(a) factors. The totality of the government's materials walked through this delicate and important balancing. There is no basis to the defendant's claim that the government's

16

approach violated the plea agreement or the law.

## CONCLUSION

For the foregoing reasons, the Court can, and should, consider the government's unclassified and classified sentencing submissions and deny the defendant's motion. Should the Court do so, the government is willing to address these and other issues further in both classified and unclassified sentencing hearings.

                                                    Respectfully submitted,

                                                    Erik S. Siebert
                                                    United States Attorney

By:      /s/
        Troy A. Edwards, Jr.
        N.Y. Bar No. 5453741
        Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Tel: (703) 299-3700
        Troy.edwards@usdoj.gov

        Christopher Cook
        Trial Attorney
        National Security Division, CES

**CERTIFICATE OF SERVICE**

      I certify that on May 14, 2025, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

                                                        /s/
                                  Troy A. Edwards, Jr.
                                  Assistant United States Attorney
                                  United States Attorney's Office for
                                  the Eastern District of Virginia