**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:24-cr-249 (PTG) |
| ASIF WILLIAM RAHMAN, | |
| *Defendant*. | |

**DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO
PRECLUDE CONSIDERATION OF CLASSIFIED SENTENCING MATERIALS**

## I.    Introduction

The government's opposition to the defense's Motion to Preclude Consideration of

Classified Sentencing Materials does not address the fundamental unfairness of introducing these

materials. Unlike classified sentencing declarations in other Espionage Act cases, this submission

offends due process for three distinct reasons. *First*, the classified materials contain protected

statements from proffer sessions that should not be used to increase Mr. Rahman's sentence. As

with the unclassified information described in the government's sentencing memorandum, the

classified materials contain descriptions of certain information that Mr. Rahman revealed in proffer

sessions and was previously unknown to the government or untied to Mr. Rahman. The only

conceivable reason the government would submit such information in the context of a "potential

harm" submission would be to obtain an increase in his sentence, in violation of United States

Sentencing Guidelines ("U.S.S.G.") § 1B1.8.

*Second*, the classified materials are submitted in support of an unfair and unprecedented

request for an upward variance, given that the government has learned no new material facts about

1

the defendant's conduct (classified or unclassified) since negotiating the plea agreement and stipulated guidelines range that Mr. Rahman accepted when he pled guilty on January 17, 2025.

*Finally*, the submission of the classified materials misleads the community. The government claims that the classified materials support the sweeping statements of actual harm that are contained in the letter of CIA Deputy Director Michael Ellis, ECF No. 72-1, although there is no classified or unclassified evidence that supports those statements. The government has chosen to submit a misleading public letter on the public record, claiming that it is supported by the classified materials, which Mr. Rahman has no opportunity to challenge, leaving the public with the impression that his actions have caused actual harm, which the government cannot prove.

## II.    This Submission of Previously Undisclosed Classified Materials Violates Due Process

It is well settled in the Fourth Circuit that a sentencing proceeding must comport with due process, which includes the right to be meaningfully heard and to challenge adverse information.[1] When a defendant is deprived of that opportunity, any resulting sentence lacks the reliability and fairness that due process demands.

First, the government admits that it has had possession of "approximately 50 pages" of classified materials since December 2024, claiming that it "presented" those materials to defense

---

[1] *See United States v. Powell*, 487 F.2d 325, 329 (4th Cir. 1973) ("[A] sentence cannot stand if it is based on assumptions . . . that are 'materially false,' or if it is founded 'in part upon misinformation of constitutional magnitude.'" (first quoting *Townsend v. Burke*, 334 U.S. 736, 741 (1948), then quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972))); *id.* at 329 ("These two defects in the sentencing procedure—failure of the record to support material factors on which the severity of the punishment rested, and Powell's lack of an opportunity to explain or refute the derogatory information on which the judge relied—denied Powell due process of law."); *United States v. Inglesi,* 988 F.2d 500, 502 (4th Cir. 1993) ("Due process might also be denied by sentencing on information whose accuracy a defendant has not had a fair opportunity to challenge . . . ."); *United States v. Jones*, 85 F.3d 617, at *5 (4th Cir. 1996) (unpublished table decision) (holding that it was "clear error for [the defendant] to be sentenced based on allegations which were untrue and which he never had a fair opportunity to contest," and vacating sentence and precluding government from relying at resentencing on "mischaracterized information" from a FBI FD-302 report that defense counsel "did not know about and had no opportunity to contest"); *United States v. Linton*, 17 F. App'x 203, 205–06 (4th Cir. 2001) ("[T]he sentencing court may not rely on factual information from sources not disclosed to the defendant. To do so would deprive the defendant of his opportunity to explain and rebut any claimed errors in the information." (citations omitted)).

counsel at an attorneys-only reverse proffer on December 10, 2024. Opposition at 2, 5, ECF No. 89. Defense counsel were afforded approximately twenty minutes to review seven documents, averaging three to four pages each. Defense counsel did not see those documents again until May 8, 2025, and had no opportunity to review them with Mr. Rahman. The government also concedes that it did not disclose the "remaining pages," which still include material that defense counsel have not been permitted to share with Mr. Rahman, until after it filed its sentencing memorandum on May 6, 2025. *Id.* at 5–6.

Although the government asserts that these "remaining pages" were "largely the declarations the agencies had just created and provided to the prosecution team," *id.* at 5, that still does not explain why information about "the *potential harm* that [Mr. Rahman's] conduct posed to the United States and its allies" could not have been otherwise conveyed to Mr. Rahman and his counsel, *id.* at 10 (emphasis added).

Instead, for months Mr. Rahman was led to believe that if he cooperated truthfully and fully with the government, he could merit a *downward* departure at sentencing from the stipulated Guidelines range. Mr. Rahman's belief was predicated on the fact that the government demanded and received a detailed accounting of his conduct—including conduct which was previously unknown to the government—*prior* to agreeing to an applicable Guidelines range in the plea agreement. The government and defense agreed to a comprehensive Statement of Facts that represented the full scope of his conduct. ECF No. 58. No new facts or evidence have arisen since that time.

The only "new" development in this case is the government's apparent dissatisfaction with the bargain that was struck. The government would have long known about "potential harm" that disclosure of these classified materials could cause, as the government is required to make that

determination when classifying information in the first place. *See* Exec. Order No. 13,526, § 1.2(a)(1), 75 Fed. Reg. 707 (Dec. 29, 2009) (explaining that "'Top Secret' shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority *is able to identify or describe*." (emphasis added)). Moreover, the stipulated Guidelines offense level *already accounts* for the "potential harm" that disclosure of these documents could cause.[2] Nothing in the classified materials can support an upward variance from a Guidelines range that already takes the most serious feature of Mr. Rahman's conduct into account.

Finally, unlike the government, defense counsel have been denied access to any and all evidence underlying these late-breaking classified statements. In doing so, the government has deprived the defense of the ability to understand adequately and challenge the impermissible use of materials to punish Mr. Rahman, including in violation of United States Sentencing Guideline § 1B1.8. This cuts sharply against repeated statements by the Fourth Circuit that, in sentencing, "disclosure, when requested, should be favored in order that the appearance of justice will be fostered with a resulting increase in respect for the administration of the law." *United States v. Knupp*, 448 F.2d 412, 413–14 (4th Cir. 1971); *see also United States v. Johnson*, 495 F.2d 377, 378 (4th Cir. 1974) ("[W]e reiterate, as we said in *United States v. Knupp*, 448 F.2d 412 . . . that disclosure when requested should be favored in order that the appearance of justice will be fostered and respect for the administration of the law increased.").

While the government does not dispute that "the information the Court relies on [at sentencing] cannot be 'materially false or unreliable,'" Opposition at 10, ECF No. 89 (quoting *United States v. Yeigh*, 725 F. App'x 207, 209 (4th Cir. 2018)), the defense has been hamstrung in

---

[2] *See* U.S.S.G. § 2M3.3, which explicitly takes into account the different potential harms accruing to disclosure of information classified as Top Secret versus information classified as Secret (or otherwise).

its ability to challenge the reliability and veracity of these materials because of the government's continuing refusal to grant access to the underlying information or any witnesses.[3]  Sentencing Mr. Rahman based on largely uncorroborated and unreliable allegations would violate his right to due process.

### III.    The Government Concedes that Certain Information Should Not Be Considered

Despite the government's claim that it "*aimed* to explicitly highlight the evidence it possessed apart from the defendant's cooperation while also explicitly noting [the cooperation-premised evidence] . . . that it was not relying on," Opposition at 16, ECF No. 89 (emphasis added), the government has not segregated the information that Mr. Rahman provided from the information already known to the government in the classified materials. Indeed, the classified materials are replete with references to conduct that Mr. Rahman revealed under the protection of a cooperation agreement—conduct that was either unknown to the U.S. government or could not have been tied to Mr. Rahman prior to his explanations. As with the government's unclassified sentencing memorandum, by failing to distinguish classified information provided during cooperation from independently obtained information, Mr. Rahman's cooperation is being used against him, in violation of the Sentencing Guidelines and the plea agreement. *See* U.S.S.G. § 1B1.8(a); Plea Agreement ¶ 16, ECF No. 57 ("The United States will not use any truthful information provided pursuant to this agreement in any criminal prosecution against the defendant in the Eastern District of Virginia . . . . Pursuant to U.S.S.G. § 1B1.8, no truthful information that the defendant provides under this agreement will be used in determining the applicable guideline

---

[3] Although the government states that it "anticipates making nearly all of the government's classified supplemental memorandum, some of the declarations, and all of the underlying attachments available to the defendant himself by the end of the week," Opposition at 13, ECF No. 89, the government continues to take the position that some classified information will be withheld from Mr. Rahman. Based on defense counsel's conversations with the government to date, it appears that Mr. Rahman will not be able to view in full all of the classified declarations that are central to the government's position on sentencing and Mr. Ellis's conclusory letter.

range, except as provided in Section 1B1.8(b).”). Put bluntly, Mr. Rahman's admissions during

cooperation should be used to help, not hurt him.

In *United States v. Malvito*, the Fourth Circuit sharply criticized the sentencing court's use

of a cooperating defendant's self-incriminating information to increase a sentence:

> We think there is no question that, contrary to the [G]uidelines' expressed policy, Malvito
> has been 'subject[ed] to an increased sentence by virtue of [his] cooperation where the
> government agreed that the information revealed would not be used for such purpose.'
> Were we to allow Malvito's sentence to stand, not only would this policy be frustrated, but
> an important and common investigative tool would lose some potency. Unless a defendant
> can feel secure in the government's promise of 'sentencing immunity,' he faces a Hobson's
> choice between losing a 'substantial assistance' departure by (i) telling so much that the
> district court denies the departure because of the information he reveals and (ii) telling too
> little, being caught in it, and losing the government's recommendation. We will not endorse
> this pointless dilemma. The government is entitled to promise that it will not use
> information gained under a cooperation agreement against the defendant, and the defendant
> is entitled to trust in the promise."

946 F.2d 1066, 1068 (4th Cir. 1991).[4] In sum, the Court should refuse to consider these improper

submissions on this basis.

## IV.    The Fundamental Unfairness of the Government's Classified Submission Cannot Be Cured With Additional Time

Counsel for Mr. Rahman have explained in detail how the government's sentencing

position is unfair, contrary to the parties' understanding and agreement, and an affront to the rule

of law. *See* Defendant's Response to Government's Sentencing Memorandum, ECF No. 88. It is

notable that, in arguing that it has done no wrong, the government can point to no case in which it

ever requested an upward variance for a cooperator—let alone one who provided extraordinary

cooperation like Mr. Rahman. *See* Defendant's Memorandum in Aid of Sentencing at 2–5, ECF

No. 70; Exhibit D to Defendant's Memorandum in Aid of Sentencing, ECF No. 80-2. And that is

---

[4] *See also United States v. Washington*, 146 F.3d 219, 221–22 (4th Cir. 1998) (vacating sentence in which district court relied upon self-incrimination information offered pursuant to a cooperation agreement to increase a sentence); *United States v. Lopez*, 219 F.3d 343, 347 (4th Cir. 2000) (holding that permitting the government to use information in the defendant's proffer statement at sentencing violated the terms of the proffer agreement).

because, to the best of our understanding, this request is unprecedented in cases where there are

no new aggravating or intervening facts.

## V.    Conclusion

The government's surprise submission of classified materials—including information

protected under a cooperation agreement—violates Mr. Rahman's constitutional rights and

undermines the legitimacy of this sentencing proceeding. The Court should reject this improper

approach and decline to consider these materials. To the extent that the Court denies the Motion

to Preclude, the defense asks that the Court assign these materials no weight for the same reasons.

For the reasons set forth above and in the Defendant's Motion to Preclude Consideration

of Classified Sentencing Materials, ECF No. 85, we respectfully request that the Court grant the

motion and exclude from consideration the classified materials at sentencing.

Respectfully submitted,

Asif William Rahman

Date:   May 20, 2025                 By:   _DAJW_____
                                           Amy Jeffress (VA Bar No. 36060)
                                           Hecker Fink LLP
                                           1050 K St. NW, Suite 1040
                                           Washington, D.C. 20001
                                           Telephone: (202) 742-2655
                                           ajeffress@heckerfink.com

                                     By:   _____
                                           Deborah Curtis (admitted *pro hac vice*)
                                           Arnold & Porter Kaye Scholer LLP
                                           601 Massachusetts Ave., NW
                                           Washington, D.C. 20001
                                           Telephone: (202) 942-5081
                                           Deborah.Curtis@arnoldporter.com

                                           *Attorneys for Defendant*